IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| MARIE TOOLE and | ) | |
| CHRIS TOOLE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:06cv652-MHT |
| MATTHEW CHUPP, et al., | ) | (WO) |
| | ) | |
| Defendants. | ) | |


OPINION AND ORDER

In this case, which was removed from an Alabama
state court to federal court based on complete
diversity-of-citizenship jurisdiction, 28 U.S.C.
§ 1332(a), two issues are presented on a motion to
remand. The first is whether the state citizenship of
a defendant uninsured motorist carrier that has 'opted
out' pursuant to Alabama law should be considered in
determining whether this court has removal

jurisdiction.[1]  The second is whether the jurisdictional amount requirement is met.  For reasons that follow, this court concludes that it should not consider the carrier's citizenship and that the jurisdictional amount is met.  As a result, this case will not be remanded to state court.

## I.

Plaintiffs Marie Toole and Chis Toole brought this lawsuit in state court against defendants Matthew Chupp, Don Bramlett, and ALFA Insurance Company.  This lawsuit arises out of a vehicular collision in which Marie Toole and Chupp were the drivers.  Relying on Alabama law, Marie Toole asserts negligence, wantonness, and recklessness claims against Chupp and a negligent entrustment claim against Bramlett, the owner of the vehicle Chupp was driving; Chris Toole has a

---

1.  As statutorily defined, "uninsured motorist" includes "underinsured motorist." 1975 Ala. Code § 32-7-23(b).

loss-of-consortium claim against Chupp and Bramlett; and both the Tooles have an uninsured motorist claim against ALFA, their uninsured motorist carrier.

1975 Ala. Code § 32-7-23 provides protection for "persons ... who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." Under Alabama law, a plaintiff is allowed either to join as a party defendant her own liability insurer in a suit against the uninsured motorist or merely to give it notice of the filing of the lawsuit and of the possibility of a claim under the uninsured motorist coverage at the conclusion of the trial. <u>Lowe v Nationwide Ins. Co.</u>, 521 So.2d 1309, 1310 (Ala. 1988). If named as a party, the insurer can elect either to participate in the litigation or 'opt out' and, while still a named defendant, sit on the sidelines; if not joined but merely given notice, it can either intervene or to stay

3

out of the case.  _Id_.  ALFA elected to opt out of the Tooles' lawsuit.

All three defendants then removed this lawsuit to federal court based on complete diversity jurisdiction. The Tooles are citizens of Alabama; Chupp and Bramlet are citizens of Georgia, and ALFA is a citizen of Alabama.  The defendants acknowledge that complete diversity is lacking where any party on one side of a lawsuit is from the same State as any party on the other side.  _Strawbridge v. Curtiss_, 7 U.S. 267 (1806). They contend, however, that, although the Tooles and ALFA are all Alabama citizens, there is still complete diversity because ALFA has opted out of this litigation and thus is a nominal party whose citizenship can be ignored for jurisdictional purposes.  The Tooles contend that ALFA's presence destroys diversity.

"[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."  _Navarro Savings Ass'n v. Lee_, 446 U.S. 458, 461 (1980).  Therefore, the

4

critical question is whether ALFA is a real party to the controversy presented by this case or is simply a nominal one.

In <u>Broyles v. Bayless</u>, 878 F.2d 1400 (1989), the Eleventh Circuit Court of Appeals confronted a similar issue.   There, a Tennessee plaintiff sued a Georgia defendant in a Georgia federal court, basing jurisdiction on complete diversity and asserting claims arising of a car accident in Tennessee; the Tennessee plaintiff also served a copy of his lawsuit on his Tennessee uninsured motorist carrier, and, as allowed by Tennessee law, that carrier participated in the Georgia federal court, including filing a motion to dismiss which contended that the court lacked diversity jurisdiction because the carrier and the plaintiff were from the same State.[2]   The trial court agreed and

_____

    2.   According to <u>Broyles</u>, Tennessee law then provided in pertinent part:

        "Service   of   Process-Actions   by
        Insurers-John Doe Warrants-Arbitration.-
                                    (continued...)

5

dismissed the lawsuit. On appeal, the Eleventh Circuit stated the question as, "Should a federal court consider the residence of an uninsured motorist carrier, served with process pursuant to Tennessee's uninsured motorist statute, when determining diversity for federal jurisdiction purposes?" Broyles, 878 F.2d at 1401.

---

2.        (...continued)
          (a) Any insured intending to rely on the coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner proscribed by law, as though such insurance company were a party defendant; such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name; provided, however, that nothing in this subsection shall prevent such owner or operator from employing counsel of his own choice; provided further, that the evidence of service of process upon the insurance carrier shall not be made part of the record."

878 F.2d at 1402-1403 (quoting T.C.A. § 56-7-1206).

In answering this question, the <u>Broyles</u> court observed that, "Because the Tennessee courts place the uninsured motorist carrier in the same position as that of the tortfeasor's own insurer, [the uninsured motorist carrier's] status as a party turns on the same principles as are generally applied in liability insurance law." <u>Broyles</u>, 878 F.2d at 1403.[3]  The court

_____

3. According to <u>Broyles</u>, "Tennessee courts have held that "'The whole intent and purpose of the uninsured motorist act, is, in essence to provide protection by making the insurance carrier stand as the insurer of the uninsured motorist, with two necessary consequences. (1) The suit has to be brought against the uninsured motorist, with the fact of insurance excluded as a possible prejudicing factor, as in any other such case; and (2) the insurance company is bound by the judgment rendered in that suit, to the extent of its limits, where it is afforded the statutory opportunity to defend the uninsured motorist.'" <u>Broyles</u>, 878 F.2d at 1403 (quoting <u>Glover v. Tennessee Farmers Mutual Ins. Co.</u>, 225 Tenn. 306, 313, 468 S.W.2d 727, 730 (1971)).  "Furthermore," according to <u>Broyles</u>, "Tennessee's uninsured motorist statute does not allow direct actions to be brought against the uninsured motorist carrier for another party's negligence." <u>Id</u>.  "Apparently, Tennessee contemplates that the uninsured motorist carrier will stand in the same position as the defendant's own insurance company would stand if the defendant had one (or in the same position as the defendant's insurance company, which has insufficient policy limits, actually
(continued...)

7

then discussed and applied these general principles of liability insurance law.

First, the <u>Broyles</u> court observed that, "In general, a real party in interest is a party that has a real and substantial stake in the litigation and who exercises substantial control over the litigation." <u>Broyles</u>, 878 F.2d at 1403. "The definition of a 'real party in interest,' however, breaks down," the court continued, "in the area of insurance law because of the courts' historic treatment of insurance companies in tort litigation." <u>Id</u>. at 1403-1404. The court stated that, "Although liability insurance companies often have a real and substantial stake in their insured's litigation, they are usually not treated as parties to an action involving their insured ... even though the company has a contractual obligation to pay for the litigation and/or to pay any judgment rendered." <u>Id</u>. at 1404. "[I]in the typical scenario, insurance

---

3.      (...continued)
stands)." <u>Id</u>.

companies defend the insured 'in cognito' so as to preserve [their] anonymity and remain undetected by the jury." Id. The court then concluded that, "It makes little sense to allow the company to proceed 'in cognito' and yet consider its phantom presence in determining diversity." Id. at 1405.

To these general principles of liability insurance law, the Broyles court outlined three exceptions that focused on the company's visibility in and control over the tort suit: "[(1) where the insurance companies] have become subrogated to the rights of their insured after payment of the loss, [(2)] are defending actions brought directly against them, or [(3)], for some reason, they must assume primary and visible control of the litigation." Id. at 1404. The Broyles court then held that, because none of the above exceptions applied to the case at hand, the uninsured motorist carrier was a nominal party and thus the trial court had diversity jurisdiction. Id. at 1405-1406.

The above general observations (that is, the general principles and the exceptions to them) apply with equal force to Alabama's liability insurance law, for Alabama, like Tennessee, sets forth a scheme that allows insurance companies to defend the insured 'in cognito' by requiring the insured to give notice to the insurer and allowing the insurer the option of participating in the litigation. While the Tennessee and Alabama insurance schemes may differ in some ways, they are sufficiently the same that the above principles and exceptions, as they are articulated in Broyles, to apply to Alabama.[4]

---

4.    While it appears that, unlike the Tennessee law, see supra note 3, Alabama law provides for an action in which the uninsured motorist carrier may be sued independently from the tortfeasor, see Ex Parte State Farm Mut. Auto Ins. Co., 893 So.2d 1111, 1115 (Ala. 2004) (under the underinsured motorist act, "[t]he plaintiff is not required to first obtain a judgment against the uninsured/underinsured motorist"), this fact is of no consequence here, where the Tooles do not bring such an action.    The court in Broyles found that, where the insurance company had, and apparently exercised, its option to defend, but took a "backseat" to the alleged tortfeasors' counsel, it was only a nominal party.    It
(continued...)

Therefore, the question for this court is whether any of the above three exceptions apply to the Tooles' case, and the answer is that none does. ALFA is not enforcing this action through subrogation; nor is it "defend[ing] itself against a 'direct action,'" _Broyles_, 878 F.2d at 1404, that is, "one in which 'the liability sought to be imposed could be imposed against the insured,'" _id._ at 1404 n. 1 (quoting _Fortson v. St. Paul Fire and Marine Insurance Company_, 751 F.2d 1157, 1159 (11th Cir. 1985)), or one over "its own acts and omissions." _Id._   Instead, it is apparent from the record in this case (in particular, the representations made by counsel for all parties at oral argument on September 13, 2006) that the Tooles named ALFA as a defendant for the sole purpose, as required by Alabama law, of putting its insurer on notice of the pendency litigation and giving the insurer the opportunity to

---

4.      (...continued)
cannot be that an insurance company that opts out completely is more "visible" or has more "control" than the insurance company in _Broyles_.

11

participate or opt out.   Now that ALFA has opted out
(and even has made explicit in its notice of opt out
that it "agrees to be bound by the verdict of the jury
and agrees to pay any judgement in accordance with its
policy of insurance"), the Tooles and ALFA simply have
no dispute between them at this time.

Also, ALFA is not assuming control of, or seeking
to control, the litigation; indeed, the company has
opted out of the litigation, agreeing to abide by the
outcome of any jury trial.   Thus, as in <u>Broyles</u>, the
liability of the insurance company is entirely
"contingent and indirect," 878 F.2d at 1404, in the
sense that Chupp and Bramlett will litigate entirely
the issue of fault, upon which any issue concerning
ALFA's policy is contingent.   <u>See</u> <u>Quick v. State Farm</u>
<u>Mut. Auto Ins. Co.</u>, 429 So.2d 1033, 1035 (Ala. 1983)
(in order to establish liability against underinsured
motor carrier, plaintiff "must be able to establish
fault on the part of the uninsured motorist, which
gives rise to damages, and must be able to prove the

12

extent of those damages.") (internal quotations and citations omitted). Moreover, Chupp and Bramlett have secured their own counsel and retained complete control over the action.

Therefore, ALFA's involvement here is insufficient to take it outside the general rule that "[liability insurance companies] are usually not treated as parties to an action involving their insured." Broyles, 878 F.2d at 1404.

This result is also consistent with the Congressional intent behind 28 U.S.C. § 1332(c), which provides that, "in any direct action against the insurer ... to which action the insured is not joined as a party defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen." Section 1332(c) was passed in response to situations where, in direct-action States, the injured party would elect to sue a diverse insurance company alone, without joining the nondiverse insured, in order to create diversity jurisdiction. Broyles, 878 F.2d at

13

1404 n. 1. Conversely, a plaintiff should not be able to defeat diversity jurisdiction by adding an uninsured motorist carrier that is playing only a nominal role.

### II.

Finally, the court finds that the three defendants have shown "by a preponderance of the evidence that the amount in controversy more likely than not exceeds $ 75,000." Alexander v. Captain D.'s, LLC, 437 F.Supp. 2d 1320, 1320 (M.D. Al. 2006) (Thompson, J.) (internal citations and quotations omitted). This standard applies where, as here, the amount in controversy is not clear on the face of the complaint. Id. Although ALFA submits no depositions, the Tooles' complaint alleges that Chupp and Bramlett are underinsured, although they are insured for $ 100,000; Marie Toole alleges substantial bodily harm, including harm that required surgery, and will cause lifelong pain and suffering; and, perhaps most importantly, counsel for the Tooles acknowledged at oral argument on September

13, 2006, that he could see a jury "bringing back more than seventy-five thousand." It thus appears "more likely than not," <u>Williams v. Best Buy Co., Inc.</u>, 269 F.3d 1316, 1320 (11th Cir. 2001), that the amount in controversy is met.

Accordingly, it is ORDERED that plaintiffs Marie Toole and Chris Toole's motion to remand (Doc. No. 6) is denied.

DONE, this the 19th day of September, 2006.


　　　　<u>　　/s/ Myron H. Thompson　　</u>
　　　　UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

    *Rev.: 4/04*

2.    **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a)    **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b)    **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c)    **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d)    **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e)    **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.    **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See</u> also Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.    **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).